# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

United States of America,

v.                                          Case No. 4:18-cr-00003

Jeffrey Alan Bourassa (1),         Michael L. Brown
                                            United States District Judge

               Defendant.

_____/

## OPINION & ORDER

The Magistrate Judge issued two Non-Final Report and Recommendations ("R&R") (Dkts. 707; 772). The first recommends denial of Defendant Jeffrey Alan Bourassa's motion to suppress items found during the execution of a search warrant at a residence on Beaver Shop Road in Cobb County on June 8, 2006 (Dkt. 631), his motion to suppress items found during a traffic stop on March 9, 2013 (Dkt. 527), and his motion to suppress items found during a traffic stop on March 24, 2006 (Dkt. 523). The Court adopts the Magistrate Judge's recommendations about the first two searches but orders an evidentiary hearing to better assess the basis for the March 24, 2006, traffic stop search.

The second R&R recommends denial of Defendant's motion to suppress wiretaps conducted by Cobb County. (Dkts. 529; 579.) The Court adopts the recommendations in the second R&R and denies Defendant Bourassa's motion to suppress.

## I.    Background and Procedural History

The United States charged Defendant Bourassa with RICO conspiracy, conspiracy to traffic a controlled substance, kidnapping, and maiming. (Dkt. 279.) Law enforcement obtained some of the evidence the United States intends to use at trial during traffic stops of vehicles in which Defendant was a passenger, specifically traffic stops on March 24, 2006, and March 9, 2013. The United States also apparently intends to introduce evidence recovered on June 8, 2006, during the search of a house in which Defendant Bourassa was located and from telephone conversations intercepted under state-authorized wiretaps. Defendant Bourassa moved to suppress all of this evidence (Dkts. 523; 527; 631; 529; 579) and the Magistrate Judge conducted evidentiary hearings (Dkts. 635; 673). The Magistrate Judge then issued two R&Rs recommending the denial of each of Defendant Bourassa's motions. (Dkts. 707; 772.)

Defendant Bourassa filed objections to both of the Magistrate Judge's R&Rs. (Dkts. 723; 783.)

## II. Legal Standard

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); FED. R. CRIM. P. 59; *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam). A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). A district judge should consider those issues to which a party makes specific objections. *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990). For those findings and recommendations to which a party has not asserted objections, the court must conduct a plain error review of the record. *See United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983).

## III. Discussion

### A. Magistrate Judge's First R&R (Dkt. 707)

#### 1. Execution of a Search Warrant on June 8, 2006

Defendant Bourassa moved to suppress the search of a house located at 2200 Beaver Shop Road in Cobb County, Georgia, on June 8, 2006, claiming that the search violated his Fourth Amendment rights. "[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998); *see also United States v. Cooper*, 203 F.3d 1279, 1284 (11th Cir. 2000) ("Fourth Amendment rights, however, are personal, and only individuals who actually enjoy the reasonable expectation of privacy have standing to challenge the validity of a government search."). "A defendant may have a reasonable expectation of privacy in a home that he does not own or rent if he shows 'an unrestricted right of occupancy or custody and control of the premises as distinguished from occasional presence on the premises as a mere guest or invitee.'" *See United States v. Campbell*, 434 F. App'x 805, 810 (11th Cir. 2011) (quoting *United States v. Baron-Mantilla*, 743 F.2d 868, 870

(11th Cir. 1984)); *see also United States v. Rodriguez*, 762 F. App'x 712, 715–16 (11th Cir. 2019) (holding defendant's status as a mere social guest or commercial transaction participant could not establish standing to challenge the search of a home).

Defendant Bourassa thus had the burden of establishing his reasonable expectation of privacy in the Beaver Shop Road house. The Magistrate Judge properly concluded that he failed to do so. At the evidentiary hearing, Special Agent Mathew Owen testified that he went to the house to investigate after a man called 911 to report that he had been threatened with a gun while at the house. (Dkt. 635 at 56:21–24.) He further explained that, after he called to the occupants several times, a woman — later identified as Ms. Mines — came out and spoke with him. (*Id.* at 57:18–61:3.) When officers asked Ms. Mines who else was in the house, she at first said she did not think anybody else was inside. (*Id.* at 61:4–9, 82:3–12.) She later changed her response and said that her roommates might be inside. (*Id.*) When Special Agent Owen asked who was living there, she identified her roommates as Mark and Ryan. (*Id.* at 61:17–20.) Special Agent Owen did not recall Ms. Mines saying anything about Defendant Bourassa. (*Id.* at 61:21–22.) The agent

testified that Defendant Bourassa and two other men, Mark and Ryan, later came out of the house. (*Id.* at 62:19–24, 64:17–21.) Police later found drugs and a gun in the house.

In his objections to the Magistrate Judge's R&R, Defendant Bourassa relies exclusively on testimony from Special Agent Owen about Ms. Mines's statements to police on the night of the search. He relies on the fact that — after exiting the house and lying to Special Agent Owen when she said no one else remained in the house — she then told the agent that her "roommates" might still be inside. Defendant Bourassa refers to this as her "disembl[ing] with the officers." (Dkt. 723 at 6.) Defendant Bourassa contends that, since he was in the house at the time, Ms. Mines identified him as one of her roommates. Not only was her statement to Special Agent Owen untrustworthy and non-specific, but she later identified the two other men who came out of the house with Defendant Bourassa (Mark and Ryan) as her roommates. Special Agent Owen testified at the evidentiary hearing that he could not recall if she said anything about Defendant Bourassa. (Dkt. 635 at 61:21–22.) Defendant Bourassa presented no other evidence at the hearing to suggest he had an unrestricted right of occupancy or custody and control

of the residence, or that Ms. Mines identified him as a roommate or guest. He really presented no evidence that he had any connection to the house at all other than having been found there by police.

Defendant Bourassa's mere presence in the house is not enough for him to challenge the search. *United States v. Garcia*, 741 F.2d 363, 366 (11th Cir. 1984) ("[M]ere presence in the apartment would not be enough to give [the defendant] standing, for the precedents binding on this court require that an occupant other than the owner or lessee of an apartment demonstrate a significant and current interest in the searched premises in order to establish an expectation of privacy."). He had an evidentiary hearing, a chance to explain his presence in the home and, from that, carry his burden of establishing a legitimate expectation of privacy. He presented no evidence suggesting he was a guest or had any connection to the residence other than having visited for momentary purposes. Perhaps he was a guest at a party — after all, police went to the house in response to a 911 call that a man had been threatened with a gun while at a party in the house. (Dkt. 635 at 80:1–5.) Perhaps he stopped by just moments before the police arrived. Or perhaps he was staying there for the night. Defendant Bourassa failed to present evidence to answer this

question. He provided the Court no evidence from which it could conclude that he had a legitimate expectation of privacy in the house. The Magistrate Judge properly concluded that Defendant's motion to suppress this search should be denied.

## 2. March 9, 2013, Traffic Stop

A traffic stop is a seizure under the Fourth Amendment. *See United States v. Spoerke*, 568 F.3d 1236, 1248 (11th Cir. 2009). A traffic stop is constitutional if a law enforcement officer has probable cause to believe the driver committed a traffic violation or a reasonable suspicion that an occupant of the car is engaged in criminal activity as required by *Terry v. Ohio. See id.*; *see also United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008). The existence of probable cause or reasonable suspicion is viewed from the standpoint of an objectively reasonable police officer. *See United States v. Chanthasouxat*, 342 F.3d 1271, 1276 (11th Cir. 2003); *see also Harris*, 526 F.3d at 1337. "[A] court must examine the totality of the circumstances in order to determine whether a search or seizure is reasonable under the Fourth Amendment." *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012).

Defendant Bourassa was a passenger in a vehicle stopped by Lieutenant Brett Dever of the Douglas County Sheriff's Office on March 9, 2013. The driver of the vehicle consented to its search. Defendant Bourassa moved to suppress the evidence (marijuana, money, and phones) that police found during the search of the car, claiming the traffic stop was unlawful. (Dkt. 723 at 2.) The Magistrate Judge found that, as a mere occupant, Defendant lacked standing to challenge the search but could challenge the legitimacy of the initial stop and the seizure of items on his person.

At the evidentiary hearing, Lieutenant Dever testified that he stopped the vehicle in which Defendant Bourassa was riding because the driver followed another car too closely and failed to move over to the right lane when driving below the flow of traffic so other vehicles could pass. (Dkt. 635 at 27:5–28:24.) He testified that, after stopping the vehicle, he issued the driver a written warning for "impeding the flow" and a verbal warning for "following too close." (*Id.*) The Magistrate Judge noted that the parties dispute which Georgia statute Lieutenant Dever used to justify his decision to stop the vehicle for "impeding the flow." The government argued that Lieutenant Dever stopped the car for violating

a Georgia law that requires cars driving below the normal speed of traffic to move into the right-most lane. Defendant Bourassa argued that he was stopped for violating a Georgia law that requires cars to surrender the left-most lane to faster vehicles.[1] Because Lieutenant Dever testified that the driver of the car was in the middle lane, Defendant Bourassa claims the officer lacked probable cause to believe the driver of the vehicle violated that Georgia law.

Neither party introduced the written warning that Lieutenant Dever issued. The Magistrate Judge found he did not have to decide which statute the officer applied, however, because Lieutenant Dever also saw the driver tailgating another car in violation of Section 40-6-49(a) of the Georgia Code. *See* GA. CODE ANN. § 40-6-49(a) ("The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.").

As his sole objection to this portion of the R&R, Defendant Bourassa argues that the Magistrate Judge erred in failing to determine which

---

[1] Defendant Bourassa cited Georgia Code Section 40-6-184. (Dkts. 678 at 21; 723 at 13.) The government cited Section 40-6-40(b). (Dkt. 692 at 18.)

Georgia statute the officer concluded the driver violated by impeding the flow. (Dkt. 732 at 14.) He claims that, if he is correct and the officer identified the wrong law, the stop was illegal. (*Id.*) That is not correct. Regardless of the basis for the written warning, the evidence clearly established that Lieutenant Dever saw the driver of the minivan tailgate another vehicle. Indeed, he testified that he recognized this as a violation of Georgia law and so decided to follow the car. (Dkt. 635 at 27:4–22.) He further testified that, while he issued a written warning for impeding the flow, he also issued a verbal warning for following too close. (*Id.* at 33:8–18.) The Magistrate Judge accepted this testimony as credible, and Defendant Bourassa does not challenge it as otherwise. The undisputed evidence shows that Lieutenant Dever had probable cause to believe the driver of the vehicle committed a traffic violation. The Magistrate Judge properly recommended denial of Defendant Bourassa's motion to suppress this March 2013 search.

### 3.    March 24, 2006, Traffic Stop

Defendant Bourassa was a passenger in another car that police stopped, this one on March 24, 2006. Police stopped that car, not because the driver committed a traffic violation, but because they had a suspicion

that a person in the vehicle had just committed an attempted robbery and carjacking.  Defendant Bourassa moved to suppress the search of his person following this stop, claiming the stop was illegal.  The primary issue before the Magistrate Judge was whether the police officer's suspicion was "reasonable" — thus authorizing the stop.  *See Spoerke*, 568 F.3d at 1248 (holding that a reasonable suspicion an occupant violated the law justifies the stop of the car).  At an evidentiary hearing, one of the officers involved in the stop testified that a fellow officer, later identified as Officer Rita, reported seeing a man who matched the suspect's description in the area acting suspiciously.  (Dkt. 635 at 9:18–25.)  According to the witness, Officer Rita then saw that man get into a car, causing the officers to stop it.  (*Id.*)

Officer Rita did not testify to explain the allegedly suspicious behavior or the similarity between the man acting that way and the physical description of the suspect.  But the Magistrate Judge found that the evidence was enough to establish the reasonableness of the officers' suspicion that the suspect in the armed robbery and carjacking had gotten into the car.  Defendant Bourassa argues that, absent testimony

from Officer Rita, the record does not support that conclusion. The Court agrees.

If the government intends to introduce evidence obtained during the March 24, 2006, traffic stop, it must notify the Court of the need for another evidentiary hearing so the Court may assess completely the reasonableness of the officers' suspicion.

## B. Magistrate Judge's Second R&R (Dkt. 772)

Defendant Bourassa moved to suppress wiretap recordings obtained by law enforcement in Cobb County Superior Court case *State of Georgia v. Jeffrey Bourassa*, Criminal Case No. 11-90-3076-42. He claims the wiretaps violated his rights under the Fourth Amendment and applicable federal and state statutory provisions. (Dkts. 529; 579 at 1–2.) After an evidentiary hearing, the Magistrate Judge recommended denial of Defendant's motion to suppress. Defendant filed four specific objections.

### 1. Probable Cause

Defendant Bourassa argues that the Magistrate Judge erred in finding probable cause for issuance of the wiretap warrants.

"An application for a wiretap authorization must be supported by the same probable cause necessary for a search warrant." *United States v. Nixon*, 918 F.2d 895, 900 (11th Cir. 1990). "The issuing [judge] is to make a 'practical, common-sense decision' about whether the 'totality of the circumstances' indicate that there is probable cause that the sought-for evidence will be obtained." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The probable cause determination of the judge who issued the wiretap order will be upheld if the judge had a 'substantial basis' for concluding that probable cause existed." *United States v. Peterson*, 627 F. Supp. 2d 1359, 1363 (M.D. Ga. 2008) (quoting *Nixon*, 918 F.2d at 900).

The "totality of the circumstances" present here supports the Magistrate Judge's conclusion that there was a substantial basis for probable cause. Agent David Schweizer of the Cobb County Police Department stated in his affidavit for the wiretap that Defendant was a high-ranking member within a criminal organization whose primary function was to coordinate and distribute marijuana, alprazolam, and other illegal drugs in large quantities. (Dkt. 579-2 at 8, 48.) He noted that police arrested Defendant Bourassa and two other individuals in a carjacking/robbery investigation that seized ninety-four dosage units of

Ecstasy, 500 dosage units of Valium, and $8,172 in U.S. currency. (*Id.*)

He explained that police also arrested him at a residence where law

enforcement found fifteen ounces of marijuana, a stolen handgun, and

$6,471 in U.S. currency. (*Id.* at 8–9.) Agent Schweizer also provided

information from people with first-hand information about Defendant's

illegal activity. He explained that Chelsea Morgan learned that

Defendant Bourassa was actively involved in the possession, sales, and

distribution of controlled substances based on her personal observations

and information she received from Kimberly Mines. (*Id.* at 10.) He

explained that, according to Samuel Cabe, Defendant Bourassa delivered

five pounds of marijuana to Mark McCain, who then gave one pound of

marijuana to Cabe in Defendant Bourassa's presence. (*Id.* at 15.) Agent

Schweizer also explained that Defendant Bourassa was using a prepaid

cellular telephone, a common practice of individuals involved in illegal

narcotics activities. (*Id.* at 15–16.) Other individuals, like the people

identified as "CS #1" and "CS #2", stated that they knew Defendant

Bourassa was involved in possessing, selling, and distributing controlled

substances like marijuana and Xanax. (*Id.* at 38, 44.) Agent Schweizer

also explained that informants had told him Defendant Bourassa used

the telephone to be intercepted, including to discuss the distribution of narcotics. (*Id.* at 8, 15.) The Magistrate Judge correctly found that Agent Schweizer's affidavit "presented a substantial body of evidence showing Mr. Bourassa's involvement in illegal gang-related activities, which included drug trafficking" and his use of the phone for those purposes. (Dkt. 772 at 12.) The Court overrules Defendant Bourassa's first objection to the R&R.

### 2. *Leon* Good-Faith Exception

Defendant Bourassa argues that the Magistrate Judge erred in concluding that the *Leon* good-faith exception applies to avoid suppression of the wiretap evidence even assuming probable cause was lacking. He claims no Eleventh Circuit decision has applied the *Leon* good-faith exception to wiretaps.

Ordinarily, a court must exclude evidence obtained in violation of an individual's rights under the Fourth Amendment. *See United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002). The exclusionary rule is a judicially created remedy to deter future Fourth Amendment violations. *Id.* "And courts rely on it as a remedy of last resort, justified *only* where the deterrence benefits of suppression outweigh the

substantial social costs of ignoring reliable, trustworthy evidence bearing on guilt or innocence." *United States v. Lara*, 588 F. App'x 935, 938 (11th Cir. 2014) (internal citations and quotation marks omitted). "Thus, when law enforcement officers exercise good faith, this goal of suppression is not met, and exclusion is not required." *Id.*

And contrary to Defendant Bourassa's argument, the Eleventh Circuit has concluded that the good-faith exception can apply to wiretap evidence. In *Lara*, the defendant argued that state authorities improperly obtained wiretaps outside their territorial jurisdiction and that the good-faith exception did not apply to avoid suppression. 588 F. App'x at 938. The Eleventh Circuit disagreed, holding that assuming "the warrants fail to comply with Georgia's territorial jurisdiction limitation, the evidence remained admissible under the good-faith exception to the exclusionary rule." *Id.*

This good-faith exception does not apply in four instances, specifically when: (1) the judicial officer issues the warrant on a deliberately or recklessly false affidavit; (2) the judicial officer abandons his judicial role; (3) the warrant so lacks any indicia of probable cause as to render official belief in its existence unreasonable; or (4) the warrant

is so facially deficient that an officer could not reasonably presume it valid. *United States v. Leon,* 468 U.S. 897, 923 (1984).

As an alternative ground to deny Defendant Bourassa's motion to suppress, the Magistrate Judge ruled that the government satisfied its burden of showing it was entitled to the benefit of the good-faith exception. Having reviewed the record, the Court agrees. There is no evidence that Agent Schweizer intentionally or recklessly misled the issuing state court judges. There is also no basis to find that the state court judges abandoned their "judicial role" in issuing the wiretap orders. Similarly, the orders were not so lacking in indicia of reliability that no reasonable agent could have believed them valid. As the Magistrate Judge noted, "'the law enforcement officers did exactly what the law requires,' in that applications and affidavits for the wiretaps at issue were submitted to Superior Court judges, all of whom then 'made a probable cause determination.'" (Dkt. 772 at 16 (quoting *United States v. Russell*, No. 2:08CR121-WHA, 2008 WL 4649051, at *5 (M.D. Ala. Oct. 20, 2008)).) No evidence shows the wiretap warrants were so facially deficient that an officer could not reasonably presume them valid. Even

if probable cause was lacking, suppression is inappropriate. The Court overrules Defendant Bourassa's second objection to the R&R.

### 3. Necessity

Defendant also claims police sought electronic surveillance as a shortcut even though traditional investigative techniques were available and working.

"The required explanation of other investigative procedures in an electronic surveillance application is 'designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.'" *United States v. De La Cruz Suarez*, 601 F.3d 1202, 1214 (11th Cir. 2010) (quoting *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974)). "The affidavit in support of a search warrant 'must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves.'" *Id.* (quoting *United States v. Van Horn*, 789 F.2d 1492, 1496 (11th Cir. 1986)). "However, a comprehensive exhaustion of all possible investigative techniques is not necessary before applying for a wiretap." *Id.* "The statute was not intended to foreclose electronic surveillance until every other imaginable method of investigation has been

unsuccessfully attempted, but simply to inform the issuing judge of the difficulties involved in the use of conventional techniques." *Id.* (internal quotation marks omitted).

Agent Schweizer's affidavit provided ample support for a finding of necessity. He testified to officers' prior investigative techniques, the results they provided, and why he did not think they were a feasible alternative to the wiretap. (Dkt. 579-2 at 69–75.) He concluded that, although prior investigative techniques had been helpful, wiretaps were the only remaining investigative method available to detect and prosecute all conspirators and locate all contraband and assets involved in the illegal drug enterprise. (*Id.* at 75.)

Agent Schweizer explained that they had obtained confidential sources with some pertinent information but the sources had "dried up" or provided all the information they had. (*Id.* at 74.) He explained that law enforcement could make undercover purchases of narcotics from members of the gang but could not position an undercover agent within the organization because it already knew each other or each other's associates. (*Id.* at 69.) He stated search warrants would not provide sufficient evidence to identify and prosecute all participants of the illegal

activity because law enforcement had not yet identified all the locations at which gang members stored drugs. (*Id.* at 70–71.) He also explained that people who possess, sell, and distribute illegal narcotics seldom keep detailed permanent records about the full scope of their illegal activity. (*Id.*) He explained that physical surveillance was not feasible because, if detected, that surveillance would cause Defendant Bourassa and his co-conspirators to become even more cautious in their activities, making detection by law enforcement even more difficult. (*Id.* at 73.)

Agent Schweizer sufficiently described law enforcement's prior efforts to investigate the case. He did not have to exhaust comprehensively all other techniques before requesting authorization for electronic surveillance. *See De La Cruz Suarez*, 601 F.3d at 1214; *see also United States v. Perez*, 661 F.3d 568, 581 (11th Cir. 2011) ("Section 2518 does not 'foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted.'" (internal quotation marks omitted)). The Court overrules Defendant Bourassa's third objection.

### 4. Sealing of the Wiretap Recordings

Defendant Bourassa claims law enforcement failed to make the wiretap recordings immediately available to the supervising judge and the state court failed to enter properly an order sealing them.

Title III states that "[i]mmediately upon the expiration of the period of the [wiretap] order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions." 18 U.S.C § 2518(8)(a). The parties agree the law enforcement officers did not immediately present the recordings to a judge or seal them after expiration of the wiretap authorization order. *See United States v. Matthews*, 431 F.3d 1296, 1307 (11th Cir. 2005) (holding "immediately" means "within one or two days"). Witnesses at the evidentiary hearing testified that officers stored the discs containing the recordings in an MCS Intelligence evidence locker for eight days before taking them to a state court judge. (Dkt. 696 at 39:11–18.)

The seal or a satisfactory explanation for its absence is required before law enforcement may use or disclose the contents of any wire, oral, or electronic communications. *See United States v. Ojeda Rios*, 495 U.S. 257, 260 (1990) (quoting 18 U.S.C. § 2518(8)(a)). The Eleventh Circuit

"has not articulated a standard of review that applies to a district court's determination that the government proffered a 'satisfactory explanation' for a delay in sealing wiretap tapes." *United States v. Wildgoose*, 246 F. App'x 674, 675 (11th Cir. 2007). The "satisfactory explanation" language in Section 2518(8)(a) requires the government to explain not only why a delay occurred but also why it is excusable. *See Ojeda Rios*, 495 U.S. at 265. "In establishing a reasonable excuse for a sealing delay, the Government is not required to prove that a particular understanding of the law is correct but rather only that its interpretation was objectively reasonable at the time." *Id.* at 266.

At the evidentiary hearing, the Magistrate Judge received testimony from Agent Schweizer, Jason Saliba (the Cobb County Assistant District Attorney responsible for the state prosecution), and Agent Cutlip (another investigating officer). The Magistrate Judge summarized that evidence in detail in the R&R. (Dkt. 772 at 23–31.) Agent Schweizer provided testimony about the government's extensive efforts and procedures to protect the integrity of the recordings. (Dkt. 696 at 43:10–46:18, 56:6–23.) Because of the passage of time, the witnesses could not recall exactly why they failed immediately to seal the

discs. Having reviewed the testimony, the Court agrees with the Magistrate Judge's conclusion that law enforcement failed to seal the discs as required because ADA Saliba was extremely busy preparing for bond and probable cause hearings in the state criminal case and the officers were unaware of the need for immediate presentment and sealing. (Dkts. 696 at 17:12–24, 45:17–46:1; 772 at 35.) Agents Schweizer's and Cutlip's belief that they had ten days after the last intercept to have the discs sealed was reasonable in the light of the language in the renewal order authorizing the wiretaps.[2] (Dkt. 696 at 38:13–19, 56:24–57:5.) The Court agrees this is a satisfactory explanation. *Cf. United States v. Pedroni,* 958 F.2d 262, 265–66 (9th Cir. 1992) (finding "satisfactory explanation" for fourteen-day delay in sealing tapes made during electronic surveillance based on evidence that integrity of tapes was maintained, and delay was because of responsible FBI agent's heavy workload); *United States v. Scafidi*, 564 F.2d 633, 641

---

[2] The Order Authorizing the Interception of Wire Communications stated:

> Let return hereof and report as required by law be made before me within forty (40) days of date hereof or ten (10) days from the date of the last interception, whichever is earlier.

(Dkt. 579-1 at 27.)

(2d Cir. 1977) (finding a "satisfactory explanation" where seven-day delay in sealing tapes was because of attorney's preoccupation with preparations for the upcoming trial). The evidentiary hearing testimony shows the delay was not an attempt to avoid statutory sealing requirements or to gain a tactical advantage. The Court finds the government presented a satisfactory explanation for the delay that meets the requirements of § 2518(8)(a).

Defendant Bourassa also argues that law enforcement used a substitute sealing method without court approval and never obtained a final sealing order. A defendant made a similar argument in *United States v. Mayfield*, No. 2:16-CR-009-RWS-JCF, 2017 WL 9477736 (N.D. Ga. Feb. 28, 2017), *report and recommendation adopted,* 2017 WL 4330369 (N.D. Ga. Sept. 29, 2017). There, the court explained:

> The statute simply requires that "[c]ustody of the recordings shall be wherever the judge orders," it does not require any particular procedure such as having the Clerk timestamp the bag or maintain it in a particular file, etc. Furthermore, the statute does not require that the issuing judge issue a separate sealing order as Defendants contend. It simply states that the recordings shall be "sealed under his directions."

*Id.* at *23 (quoting § 2518(8)(a)).

Here, the state court ordered the clerk to take custody of the discs and keep them under seal. (Dkts. 674-1 at 4–5; 696 at 15:6–12, 32:6–14.) The officers thus made the recordings available to the judge and sealed them under his directions as 18 U.S.C. § 2518 requires. The Court overrules Defendant Bourassa's fourth objection to the R&R.

## IV.    Conclusion

The Court **OVERRULES in part** Defendant Bourassa's objections to the Magistrate Judge's first R&R (Dkt. 723) and **ADOPTS in part** the Non-Final Report and Recommendation as to Defendant Bourassa's motions to suppress search and seizure (Dkt. 707). The Court thus **DENIES** Defendant Bourassa's motion to suppress the search of the residence located on Beaver Shop Road (Dkt. 631) and **DENIES** his motion to suppress the search of a vehicle on March 9, 2013 (Dkt. 527). The Court **DEFERS** ruling on Defendant's motion to suppress the search of a vehicle on March 24, 2006 (Dkt. 523). The Court will set a hearing on the motion by separate order.

Further, the Court **OVERRULES** Defendant Bourassa's objections to the second R&R (Dkt. 783) and **ADOPTS** the Non-Final Report and Recommendation on Defendant's Motion to Suppress Intercepted

Communications (Dkt. 772). The Court thus **DENIES** Defendant Bourassa's motion to suppress the Cobb County Prosecution Wiretaps (Dkts. 529; 579).

      **SO ORDERED** this 18th day of October, 2019.


_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE